Brock *v.* Barnes.

BROCK *vs.* BARNES, executor &c.

Where an agreement, sought to be enforced, is made between principal and agent, or client and attorney, giving benefits and advantages to the agent and attorney, the right of action is not deemed to be established on proof of the due execution of the instrument, without clear proof, outside the paper, of its integrity and entire fairness.

The legal presumption is against its validity, and the *onus* is on the agent and attorney to show that all was fair, and that the client acted freely and understandingly.

The rule is the same, as to dealings between principal and agent, as between client and attorney.

If it be claimed that the instrument was intended to provide a remuneration for past services, then the services must be proved; that there existed at the time of giving it at least a just and moral obligation to pay; that the instrument was fully understood by the person executing it, and was made in pursuance of, and in accordance with, a well considered, definite and settled purpose.

A paper, executed by a principal and client to his agent and attorney, affords no presumption on these points, and without direct proof establishing each of the above requirements, is of no value as the basis of a recovery for past services.

On the 15th of February, 1859, a paper was executed by B., an aged, infirm and feeble man, who had been the client of the plaintiff for many years, and for whom the plaintiff then acted as general agent, which paper extended back, in its operation, to September, 1836, and gave to the plaintiff an annuity of $100 for each year during that time, payable with interest. The body of the instrument was not in B.'s handwriting, and although under seal, it was not witnessed, nor was there any evidence of value, apart from the paper itself, to strengthen the claim of the plaintiff, under the same,

made against the executor of B. after the death of the latter. On the other hand it was proved that settlements were repeatedly made between the parties during the period covered by the instrument, and numerous receipts were given to B. by the plaintiff, being in terms receipts in full of all claims and demands; and that the plaintiff had, in 1858, given B. a due-bill, for $74.87, expressed as being " on *settlement,* as per receipts this day passed."

*Held* 1. That it required strong and very pointed and significant oral proof to overcome these repeated written acknowledgments of satisfaction of all prior claims and demands; and that nothing less than the most direct and unequivocal evidence against them would suffice.

2. That regarding the benefits and advantages conferred by the instrument as in the nature of a bequest or gift, the paper was wholly without consideration and void

3. That if it were deemed to provide a recompense for future services, then it was to be regarded, in view of the relation which existed between the parties to it, with the same suspicion, and must be held subject to the same rules, as if it provided remuneration for past services merely, and could be upheld only on the clearest proof that its contents were well understood by B. and that it was made by him to be enforced according to its terms.

4. That the paper was not intended to evidence a bequest; nor was it to be regarded as in the nature of a gift; but according to its plain import, it provided a remuneration for both past and future services.

5. That in the absence of any evidence showing the circumstances under which the receipts were given, by the plaintiff, or to what transactions they had particular reference, they remained wholly unexplained.

6. That there being no evidence in the case which could fairly be said to explain away the effect of the receipts, the plaintiff could not maintain an action upon the instrument, against the executor of B.

An attorney may bargain with his client, and an agent with his principal, but in such case the attorney and agent, before he can enforce the agreement in his favor and for his benefit and advantage, must show that, as regards that transaction, he dealt with entire fairness; and that no advantage was taken of his position. *Per* BOCKES, J.

THE plaintiff presented to the defendant, as executor of Melvin Barnes deceased, a claim against the estate of the deceased, which claim, not being allowed, was, by an order of the surrogate of the county of Clinton, made on the 24th of June, 1861, referred to Samuel Ames, Rufus Heaton and Russell C. North to hear and determine the same, and the order was filed and entered in the office of the clerk of Clinton county. The cause was tried before the referees; who subsequently made their report, in writing, by which they

found and certified as follows: That on the 15th day of February, 1859, the said Melvin Barnes, deceased, made and entered into an agreement in writing, under his hand and seal, with the said Lorenzo D. Brock, of which the following is a copy:

"I have this day talked over and made the following arrangement with L. D. Brock in relation to my past business which I have had done. Said Brock commenced doing my business for me in September, 1836, and has done it ever since, and for doing it I do allow him for the same one hundred dollars a year from the time he so commenced up to this time, and in the future, so long as he continues to do my business as he has heretofore in the county of Clinton and state of New York; and this I fix as my compensation to him; interest is to be cast on the same, but said interest and the said amounts above mentioned are not to exceed the sum of three thousand dollars at the close of the year 1860. I also took his Natural History of New York, and his gold watch, chain and seal; I hold his receipt for the same, but I have not paid him for them; I intended to let Mrs. Russell, of Burlington, have the watch, &c. and took it with that view, but as yet I have not done it. The Natural History I intended as a present to an old friend who lives near Oberlin, in the state of Ohio. I have not heard from him since I wrote him last. If the above property is in my possession, (it not being otherwise disposed of,) at the time of my death, is to be returned to him, and if disposed of, is to be paid for at the price stated in his receipt to me. I owe him for foreclosing the McCadden mortgage and for making a codicil to my will. I hold his note for seventy-seven dollars and a fraction, which is to be deducted from my indebtedness to him. There is some other small accounts which he holds against me, that is also to be settled. And I do hereby enjoin upon my executors to pay him in such demands as I have in Clinton county for the same. I have also rec'd of L. D. Brock R. G. Stone's recp't in full for printing notice of

mortgage sale, Melvin Barnes against Jonathan K. Brewster, which was paid by said Brock, Dec'r 10, 1857. Plattsburgh, Feb'y 15th, 1859. (Signed) MELVIN BARNES." [L. S.]

That under said agreement and arrangement, said Lorenzo D. Brock continued to act as the agent of said Melvin Barnes, deceased, from the month of September, 1836, to the month of December, in the year 1860, when the said Melvin Barnes died. That on the 12th day of June, 1858, the said Brock executed a bill of sale in writing, under his hand, to the said Melvin Barnes, deceased, of, among other things:

| | |
|---|---:|
| One Watch, . . . . . . . . . . . . | $150 00 |
| One Watch Chain, . . . . . . . . . . | 80 00 |
| Natural History, . . . . . . . . . . | 100 00 |

In which bill of sale, it is stated that said property was sold to said Barnes, May 26th, 1858, and in which bill said Brock acknowledges payment for the articles therein named, at the prices therein stated. The referees found and certified that said watch, watch chain and Natural History were the same which were mentioned in the said agreement, and that the prices above mentioned were the same sums or prices agreed to be paid therefor by Barnes to Brock, in case they should not be returned to said Brock; that they never were returned to Brock, either in the lifetime of said Barnes, or after his decease. That on the 1st of December, 1856, the said Brock, as an attorney at law, foreclosed for said Melvin Barnes, deceased, a certain mortgage against one McCadden; the legal fees, to which said Brock was entitled for such services, amounted to the sum of $96.38, which is the same item also mentioned in the agreement before described. That on the 10th day of December, 1857, Brock paid to one R. G. Stone for printer's fees, advertising mortgage sale in the case of Melvin Barnes against Jonathan K. Brewster, the sum of $15, which was also mentioned in said agreement. That Brock, as attorney and counselor for said Barnes, deceased, drew for him a codicil to his last will and testament, which service was worth the sum of $10. That Brock also drew

for said Melvin Barnes, deceased, a power of attorney to Melvin A. Barnes, which services were worth $1.25. That said Brock paid to the daughter of said Barnes the sum of one dollar, which was allowed by the defendant. That on the 7th day of July, 1856, the said Brock received from one Catherine McCann for said Melvin Barnes, deceased, and which was due from her to said Barnes, the sum of $100, for which he agreed to account to Barnes, with interest from the day last mentioned. That in the month of July, 1859, Brock paid to Barnes, to apply upon said last mentioned indebtedness, the sum of $100. That on the 12th day of June, 1858, the said Melvin Barnes, deceased, and the said Brock settled together, and upon such settlement there was found due from said Brock to said Barnes, the sum of $74.87, for which sum Brock executed and delivered to Barnes his promissory note, payable on demand, with interest, which note remains unpaid, specifically; that it is recited in said note that said amount was "due Doct. M. Barnes on settlement as per receipt this day passed." That on the same day the said Brock also executed and delivered to said Barnes a bill, for costs and services &c. amounting to $36, receipted by him as follows:

"Received of Doct. Melvin Barnes in full of the above account, which is all the account I have against him up to this day, except the foreclosure of the Francis McCadden mortgage. Plattsburgh, June 12th, 1858.

(Signed,)     · L. D. Brock."

That on the 17th day of November, 1855, the said Brock, as surety for, and jointly and severally with one John Wells, made, executed and delivered their note to said Melvin Barnes, whereby they promised to pay to said Barnes or bearer, the sum of $100 on the 20th day of February, 1856, with interest; that on the 4th day of July, 1859, the said John Wells paid, to apply on said note, the sum of $50, and the same was indorsed thereon by said Barnes; that the balance of said note with interest remains unpaid; that on the 4th day of July, 1848, on the 10th day of May, 1850, on

the 2d day of October, 1849, and on the 24th day of May, 1851, the said Brock signed and delivered to said Melvin Barnes, deceased, receipts for small sums of money, paid by said Barnes to said Brock, and in each of said receipts Brock acknowledged that such payments to him were in full of all demands, due from Barnes to Brock; that such settlements and receipts made between said Brock and Barnes and given by Brock to Barnes, were for special services of said Brock, done for Barnes, and for moneys paid by Brock for said Barnes, and were not intended by them to be a settlement of, or payment for the services claimed to have been done by said Brock for said Barnes, mentioned and described in the before mentioned agreement.

The referees certified and reported that there was due to said Lorenzo D. Brock, from Melvin A. Barnes, the executor of the last will and testament of Melvin Barnes, deceased, the sum of $3286.17, on account of the several matters hereinbefore mentioned, as per the statement annexed to the report.

And they found and decided that the several receipts given by Brock to Barnes as aforesaid, and all dated prior to the agreement before described, were not a bar to a recovery by Brock for his services rendered prior to the dates of said receipts; that said receipts were explained and the effect thereof limited by the agreement of February 15th, 1859, which showed that said services had not been paid or settled for and were not included in the said receipts and settlements.

This report of the referees was confirmed, at a special term of the court, and judgment was entered in favor of the plaintiff for $3562.43, damages and costs, October 28th, 1862. From which judgment the defendant appealed to the general term.

*L. Stetson,* for the appellant.

*Smith M. Weed,* for the respondent.

Brock *v.* Barnes.

*By the Court,* Bockes, J.    If the decision of this case depended solely on the question whether the signature to the paper was genuine, there should be no hesitation in directing an affirmance of the judgment.    There is a most decided preponderance of evidence in favor of its genuineness.    On that point the proof is very satisfactory and conclusive.    As the case is presented, we cannot doubt but that the signature to the paper is in the handwriting of Doct. Barnes.

The difficulty in the case is in another direction.    The recovery was obtained against the executor on a claim evidenced by a singular and extraordinary instrument.    The paper is made the foundation of a claim, which without it is wholly or substantially groundless.    It was executed by an aged, infirm and feeble man, who had been the client of the plaintiff for many years, and for whom the plaintiff then acted as general agent.    The instrument was not witnessed, although under seal; nor is there any evidence of value, apart from the paper itself, to strengthen the claim.    The plaintiff's case, as presented to us, rests solely, or as we look upon it, substantially, on the force, strength and legal effect of the paper itself.    Regarded as a transaction between strangers, or between persons in no relations of confidence to each other, proof simply of the due execution of the instrument would be sufficient to establish the demand, the agreement being neither unlawful nor immoral in its terms or provisions.    But the case is quite different when the agreement sought to be enforced is made between principal and agent, or client and attorney, giving benefits and advantages to the agent and attorney.    In such a case the right of action is not deemed to be established on the instrument, without clear proof, outside the paper, of its integrity and entire fairness.    The legal presumption is against its validity, and the *onus* is on the agent and attorney to show that all was fair, and that the client acted freely and understandingly.    So if an attorney bargain with his client, the burden is on him of establishing its perfect fairness, adequacy and equity; and if no proof be

given, or if the proof be insufficient to meet this requirement, the court must hold the case one of constructive fraud. (*Story's Eq. Juris.* § 311.) The rule is the same as to dealings between principal and agent as between client and attorney. (*Id.* § 315.) This is a rule of propriety and public policy. Judge Story has well said that the " law with a wise providence, not only watches over all the transactions of parties in this predicament; but it often interposes to declare transactions void, which between other persons would be held unobjectionable." He adds, " it does not so much consider the bearing or hardship of its doctrine upon particular cases, as it does the importance of preventing a general public mischief, which may be brought about by means secret and inaccessible to judicial scrutiny, from the dangerous influences arising from the confidential relation of the parties." It was decided in *Evans* v. *Ellis,* by the court of errors, (5 *Denio,* 640,) that where the relation of solicitor and client exists, and a security is taken by the solicitor from his client, the presumption is that the transaction is unfair, and the *onus* of proving its fairness is on the solicitor. In this case Senator Spencer says in substance, that transactions between solicitor and client are to be looked on with no favor, and should be scrutinized with the utmost rigor; and Beardsley, J. says that no " security given by a client to his solicitor should be allowed to stand in any case, unless its fairness in every respect is shown by the solicitor. The presumption in such cases is against the fairness of the transaction, and the burden of proof to repel the presumption is on the solicitor. He must show he gave value for it." In *Sears* v. *Shafer,* (6 *N. Y. Rep.* 268; 2 *Selden,*) Judge Gridley holds the following language : " A court of equity interposes its benign jurisdiction to set aside instruments executed between parties standing in the relation of parent and child, guardian and ward, physician and patient, solicitor and client, and in various other relations in which one party is so situated as to exercise a controlling influence over the will and conduct and

interests of another. In some cases undue influence will be inferred from the nature of the transaction alone: in others from the nature of the transaction, and the exercise of occasional or habitual influence."

In *Howell* v. *Ransom,* (11 *Paige,* 538,) it was held that it was not necessary to show actual fraud in order to invalidate transactions between attorney and client. And the chancellor remarked, " if the court is not bound to set aside the sale, [a sale by a client to his attorney] as a matter of course upon the application of the client in such a case, the whole burden of establishing the fairness of the sale, and that it was made upon a full or adequate consideration is at least cast upon the attorney." There are many other cases to the same effect. (9 *John.* 253. 10 *Paige,* 352. 2 *Denio,* 607. *Story's Eq. Juris.* §§ 308 *to* 324. 7 *Sim.* 539. 27 *Eng. Law and Eq.* 168. 3 *Cowen,* 537. 13 *Barb.* 524. 31 *id.* 9. 39 *Law and Eq. Rep.* 569. 35 *id.* 100. 16 *N. Y. Rep.* 285.)

In *Savery* v. *King,* the lord chancellor said that when a solicitor obtains a benefit from a client, a court of equity expects him to be able to show that he has taken no advantage of his professional position. He adds: this duty exists on the part of the solicitor *in all cases* where he is dealing with his client. This rule is to have full vigor, whether the client be more or less a man of business. (39 *Eng. L. and Eq. Rep.* 569.)

In this case there can be no dispute in regard to the fact, that the relation between the plaintiff and Doct. Barnes was one of confidence. If not that of attorney and client, it was that of principal and agent; and in either case the principles of law applicable to the case are the same. According to the authorities, therefore, the presumption is against the integrity of the instrument on which the plaintiff relies for a recovery. The right of action on it can only be sustained by establishing its fairness, and the *onus* of proof is on him.

If the instrument be deemed to provide a remuneration for past services, then the services must be proved; and further,

that there existed at the time of giving it, if not a legal, binding indebtedness, at least a just and moral obligation to pay; and still further, that the instrument was fully understood by the testator, and was made in pursuance of, and in accordance with, a well considered, definite and settled purpose. The paper itself, having been executed by a principal and client to his agent and attorney, affords no presumption on these points. Consequently without direct proof, clearly establishing each of these requirements, the paper is, according to the authorities, of no value whatever as the basis of a recovery for past services. An instrument executed between parties standing in no relation of confidence to each other is itself evidence of the matters therein stated, admitted and agreed upon, on proof simply of its due execution. Not so, however, when the instrument is executed by a principal and client to his agent and attorney, giving to the latter benefits and advantages. In such case the relation the parties occupy to each other raises a presumption of unfairness, which must be met and repelled by proof, before the instrument can be relied on as a basis of recovery. Without such repelling proof the law pronounces it a case of constructive fraud. Keeping in view these well established principles, how stands the case under consideration?

The evidence, considered together as a whole, militates against the probability of any previous intention of the testator to acknowledge a liability of the kind or character described in the instrument. The paper was made February 15, 1859, and extends back in its operation to September, 1836, and gives an annuity to the plaintiff of one hundred dollars for each year during that time, and puts it on interest. Yet settlements were repeatedly made between the parties during this period, and numerous receipts were given by the plaintiff, being in terms receipts in full of all claims and demands. In 1848, the plaintiff gave the intestate a receipt in full of all demands of every nature, to that

date. In 1849, he also gave another, in full of all accounts and demands; another in 1850, in full of all demands of every nature; another in 1851, in full of all dues, debts and demands. In 1858 he also gave still another receipt of a bill amounting to $36, and added " which is all the account I have against him up to this day," excepting a certain bill for foreclosing a mortgage. At the same time he gave the testator a due-bill as follows: " Due Doct. M. Barnes *on settlement* as per receipts this day passed, seventy-four dollars and eighty-seven cents, with interest, on demand." Thus it seems that down to within about eight months of the time of giving the paper relied on as the basis of a recovery, the plaintiff held no just or legal claim against the testator. These numerous evidences of settlements and payments seem to have been purposely accumulated, and unexplained, preclude the idea of any purpose or intention on the part of the testator to acknowledge an indebtedness, such as the paper of February 15, 1859, declares and provides for. True, these receipts were open to explanation; but it requires strong and very pointed and significant oral proof to overcome these separate written acknowledgments of satisfaction of all prior claims and demands. Nothing less than the most direct and unequivocal evidence against them would suffice. We are unable to find such evidence in the case.

If we regard the benefits and advantages conferred by the instrument in the nature of a bequest or gift, the paper is wholly without consideration and void. (*Harris* v. *Clark*, 3 *N. Y. Rep.* 93.) If it be deemed to provide a recompense for future services, then it is to be regarded, in view of the relation which existed between the parties to it, with the same suspicion, and must be held subject to the same rules as if it provided remuneration for past services merely, and can be upheld only on the clearest proof that its contents were well understood by the testator, and that it was made by him to be enforced acccording to its terms. But the paper was not intended to evidence a bequest; nor is it to

be regarded in the nature of a gift. According to the plain import of the instrument, it provided a remuneration for both past and future services. In this regard it was precisely like the instrument in *Dent* v. *Bennett*, (7 *Sim.* 539. *S. C.* 4 *My. & Cr.* 269. 3 *Jur.* 99,) which case bears a strong analogy to this. Bennett was the medical attendant of Dent, who was quite aged. After Dent's decease, Bennett produced an agreement signed by both parties, wherein Bennett agreed to give Dent his medical attendance during the remainder of his, Dent's, life; and Dent in consideration thereof, and out of gratitude and respect, and for past services, promised Bennett that he should have and be entitled to £25,000, which Dent directed to be paid him six months after his decease. The paper had an indorsement on it signed also by Dent, declaring that the transaction was *bona fide*. The court set the agreement aside, and held the principle upon which courts of equity relieve against securities taken by an attorney from his client to apply to all cases in which confidence is reposed by one party in the other, and therefore the court would relieve against an agreement taken by a medical adviser from an aged patient, by which the former, in consideration of his future and past services, was to be paid a large sum of money after the death of the latter. In this case the vice chancellor stated that he proceeded on the supposition that the signature of Dent to the agreement, as well as to the indorsement, were genuine; and he added: "taking it to be so, I ought at once to set my face against a transaction which is fraught with all the mischief that this court can ever set itself to prevent in the case of solicitors and clients."

In this case Bennett gave an explanation of the circumstances under which the agreement was made and executed, which tended to show that its execution was fair, without persuasion, and deliberate, yet the court set it aside and spoke of the transaction in the severest terms of censure.

An attorney may bargain with his client, and an agent

Brock *v.* Barnes.

with his principal, but in such case the attorney and agent, before he can enforce the agreement in his favor and for his benefit and advantage, must show that as regards that transaction he dealt with entire fairness and that no advantage was taken of his .position. This is the doctrine of all the cases, both in this country and in England, and accords with that sound morality which forms the basis of an enlightened public policy.

But it is insisted that there is evidence sufficient to repel all presumption against the validity of the instrument. It is true there is proof that the plaintiff acted as the agent, attorney and counsel of the testator during the time specified in the agreement. The extent and value of those services are not however very clearly established. Perhaps these points ought to be regarded as covered in this case, on this appeal, under the ruling demanded by the defendant on the trial, and adopted by the referees at his request. On first examination I was inclined so to hold. To the extent of the ruling demanded and taken by the defendant on the trial he must of course be held and concluded. But on a careful examination it will be seen that the defendant did not ask to have excluded a part of what was necessary to make up the plaintiff's case. No competent evidence was offered by the plaintiff, or excluded on the defendant's request, going to show that the instrument was understood by the testator, and that it was intended to stand as evidence of a well considered purpose, and to be enforced according to its terms. We have seen that under the circumstances of this case, this was not to be intended, as in ordinary cases, simply on proof of the execution of the instrument. It does not appear that the body of the paper was in the testator's handwriting. If it had so appeared this would have afforded the best and most conclusive evidence of the requisite understanding and purpose. If there had been a witness to its execution who could state the circumstances of the transaction, from which it could be seen that it was well considered; or if it could

be shown that the instrument had ever been a subject of conversation by the testator, such evidence would have gone far towards establishing its fairness, against the legal presumption of its invalidity.

The testimony of Mr. Town, of Mr. Miller and of Mr. Richardson bear in some degree on the question. That of Mr. Richardson seems of very little moment. The substance of the testimony given by Mr. Miller is that the plaintiff was a trusty and faithful agent. The testimony of Mr. Town is more to the point. He says the testator told him the plaintiff had always done his business well; that he had never paid him any thing, but calculated to pay him; that he calculated the plaintiff should have his pay in the end. It will be observed that no intention is expressed of ever giving the paper; nor indeed is any allusion whatever made to it by the testator, first or last, so far as is disclosed by the evidence.

In answer to the statements or admissions of the testator sworn to by Mr. Town, and with a view to countervail them, the defendant urges, *first,* the statements and admissions of the plaintiff, sworn to by Mr. McMasters and Mr. McKinney, and *secondly,* the receipts given from time to time, in full of all accounts, claims and demands.

The declarations of the plaintiff, as sworn to by McMasters and McKinney, made at the time they represent them to have been made, are not a little remarkable. But if these declarations are laid out of the case where is the evidence to explain the numerous receipts? Is the evidence of Town, or his evidence with that of Miller and Richardson, or considered in connection with any other proof in the case, sufficient to explain and limit their clear import? Of those receipts there are five, not to mention the legal presumption arising from the giving of the note for $74.84.

The first was given in 1848, the last in 1858; each in express terms, being in full of all demands. No explanation of these receipts is attempted by any direct reference to them or

Brock *v.* Barnes.

to either of them.   But it is said the testator admitted he had not paid for the services, and stated that he calculated to pay him.   This admission and statement to one or at most to two persons, is substantially all we have to repel and over-come the solemn assertion in writing, made on five different occasions by the plaintiff, to the effect that he had no demand for those services.   Nay more, such oral admission is sub-stantially all we have to overcome, not only those five written , statements and assertions, but also to repel the presumption of settlement arising from the giving of the note in 1858, (6 *N. Y. Rep.* 461 ; 5 *Denio,* 304,) as well as also to repel the presumption declared by law against the validity of the instrument which constitutes the basis of the plaintiff's claim. Is this not asking too much for an oral admission, always regarded as the weakest and most unreliable evidence ?   We think it is.   The usual mode of explaining a receipt is to show precisely what it was intended to witness, by giving evidence of the transaction to which it related.   If a receipt in full of all demands is sought to be limited to a particular matter, there must be proof showing that it related to nothing else ; that no general settlement in fact took place ; and that it was not intended as evidence against claims other than those at the time considered and covered by it.   Let us examine these receipts.   The one of November 6, 1848, is under a bill of $1.50, for drawing a bond and mortgage.   It reads thus : " Rec'd payment in full on the above acc't, *and also* in full of all demands of every nature up to this date."   Here it is plain that not only was payment admitted of the bill of $1.50, but of all other demands.   There is manifested a plain pur-pose that it should have that effect.   The receipt of October 2, 1849, also that of May 10, 1850, and also that of May 24, 1854, are receipts in the usual simple form, of payment in full of all accounts, dues, debts and demands.   There is no evidence whatever showing the circumstances under which they were given, or to what transactions they had particular reference ; therefore they remain wholly unexplained.   The

receipt of June 12, 1858, is under a bill comprised of several items, and reads as follows : " Received of Doct. Melvin Barnes in full of the above account, *which is all the account I have against him up to this day,* excepting the foreclosure of the Francis McCadden mortgage." This clause seems to have been purposely introduced, with a view to its legal effect as evidence, against any claim which might thereafter be presented by the person signing it. There is no evidence in the case which can fairly be said to explain away the effect of this receipt. And indeed the same remark will apply to each and every of them.

In every view of the case, except as to the genuineness of the signature to the instrument, we regard the decision and judgment as clearly against the evidence here presented. The case must go back for re-trial, where the plaintiff will have the opportunity of showing such facts as will repel the presumption which now rests against his case. But inasmuch as a new trial is ordered on the ground that the decision is against evidence, it must be on condition that the defendant pay the costs of the former trial and of the appeal.

Judgment reversed, report of referees set aside, and new trial ordered ; but on condition that the defendant pay the costs of the former trial and of appeal. (*a*)

[WARREN GENERAL TERM, July 14, 1863. *Rosekrans, Potter, Bockes* and *James,* Justices.]

(*a*) This case was re-tried before the referees, in pursuance of the above decision, and they again reported in favor of the plaintiff. Judgment having been entered on the report of the referees, a second appeal was taken, to the general term. At the January term, 1864, that judgment was affirmed. On the second trial evidence was given which, in the opinion of the referees, answered the requirements of the law as declared in the foregoing opinion. It is understood that the defendant has appealed to the court of appeals, from the judgment of affirmance, as well on the ground that the case was not changed, in any respect, by the second trial, as on questions in regard to the admissibility of evidence.       REPORTER.