WILLIAM F. NESBIT, Administrator, and ANN NESBIT, Administratrix, with will annexed, of MARY SMITH, Appellants, *v.* JACOB K. LOCKMAN and others, Respondents.

Where the justice at Special Term finds, as facts, that the assignee of certain bonds and mortgages, and donee of a certain check of the assignor, was the clerk of the attorneys, &c., of the assignor, and had charge of much of the business of the assignor, &c., and was familiar with the extent and nature of her property, and enjoyed her confidence and esteem; and that the assignment was a gift, freely and voluntarily made by the assignor to the assignee, without any fraud, deceit, or undue influence on the part of the assignee, or advantage taken by reason of his business relation, &c.; the law will uphold the transaction.

Where persons standing in confidential relations make bargains with, or receive benefits from, the person for whom they are counsel, &c., the transaction is to be scrutinized with the extremest vigilance, and regarded with the utmost jealousy. Per HUNT, J.

The presumption is against such a transaction; and the *onus* is upon the party seeking to establish the gift, &c. Per HUNT, J.

HUNT, J. This is an action brought by the plaintiffs as the administrators of Mary Smith, to set aside an assignment by said Mary Smith to Jacob K. Lockman, of two bonds and mortgages, and the delivery of a check, amounting in all to about $10,000, and to compel Lockman to account for the amount of the said securities. The complaint alleges, among

other things, that the Messrs. De Witt had charge of the bank books, securities and evidences of debt of the deceased, and that the "relation between them was that of clients and counsel, to a very unusually intimate and confidential degree." It further alleges that Lockman has been for many years a clerk or agent of the De Witts', having a familiar acquaintance with their affairs and that of their clients; that he thereby acquired a knowledge of the affairs of the deceased, and an influence over her, and obtained her confidence so that she would readily follow his advice as to the execution of any papers brought by him for her execution, and that she had also employed him in the collection of her rents. The complaint further alleges that Lockman obtained the assignment of the securities in question, by means of undue influence over the deceased, arising from such confidential relations, and that he concealed from her the true nature of the act, by which she transferred to him the securities in question.

The learned justice, before whom the cause was tried, finds, as facts, "that Lockman had been for many years a clerk of Messrs. C. J. and E. De Witt, who were and for many years had been the attorneys and counselors and legal advisers of said Mary Smith, and as such had the principal charge and management of her business affairs, and that Lockman, as such clerk, had attended to and had charge of much of the business of said Mary Smith, and as her agent had collected her rents and attended to the disbursement and investment of her moneys, was quite familiar with the extent and nature of her property, and enjoyed her confidence and esteem. That the several assignments of the bonds and mortgages, and of the check, were not made upon any pecuniary consideration, but were, in fact, a gift and donation by said Mary to said Lockman. That the same were freely and voluntarily made and given by said Mary, as and for a gift and donation to said Lockman, with intent to transfer and deliver the said bonds and mortgages and check to him as his own, without any fraud, deceit or undue influence on the part of the said Lockman, or advantage taken by reason

of his business relations to her, and without suggestion or inducement on his part, but of her own free will and purpose." The justice, who tried the cause upon these facts, dismissed the complaint. Upon an appeal to the General Term of the first district, the judgment of the justice was affirmed. The plaintiffs appeal from this latter judgment to this court, and ask, that upon this admitted state of facts, the judgment of the General Term should be reversed. This court is not at liberty, if it desired, to go behind the finding of facts by the justice. It is an appeal upon the law and not upon the facts, that is before us, and it presents a single question. The defendant Lockman, having been a clerk of the Messrs. De Witts, having been the agent of the deceased to the extent indicated, having enjoyed her confidence and esteem, and having received from her a gift of the securities in question, without inducement or suggestion on his part, without fraud, deceit or undue influence, but of the free will and purpose of the deceased, is such gift necessarily and absolutely void? Although honest, fair, without fraud or influence in fact, does this state of facts create a fraud in law, or is the presumption of fraud so irresistible and invincible that the fact cannot be allowed to overcome it? It is not found, by the court, that Lockman was the attorney and counsel of Mary Smith, nor even that he was an attorney-at-law, but I shall examine the case without reference to this criticism.

It is certain that the law regards a transaction, like the one in question, with great suspicion; that where persons, standing in a confidential relation, make bargains with, or receive benefits from, the persons for whom they are counsel, attorney, agent or trustee, the transaction is scrutinized with the extremest vigilance, and regarded with the utmost jealousy. The clearest evidence is required, that there was no fraud, influence, or mistake; that the transaction was perfectly understood by the weaker party; and, usually, evidence is required, that a third and disinterested person advised such party of all his rights. The presumption is against the propriety of the transaction, and the *onus* of establishing the

gift or bargain to have been fair, voluntary and well understood, rests upon the party claiming, and this in addition to the evidence to be derived from the execution of the instrument conveying or assigning the property.

This presumption is not, however, invincible; but it may be overcome by proof of the character already referred to. Such are the cases, both in England and in this country; and the difference in them is chiefly in the degree of suspicion attaching to each particular case, and in the amount and character of the evidence necessary to sustain the transaction. I find no case in this State which holds the presumption of fraud or undue influence to be so strong in law, that it cannot be overcome by evidence; but many, giving the substance of the principle, as I have stated it above.

In *Brock* v. *Barnes* (40 Barb., 521), the court lay down the rule thus: "Where an agreement, sought to be enforced, is made between principal and agent, or client and attorney, giving benefits and advantages to the agent and attorney, the right of action is not deemed to be established, on proof of the due execution of the instrument, without clear proof, outside the paper, of its integrity and entire fairness. The legal presumption is against its validity, and the *onus* is on the agent and attorney to show that all was fair, and that the client acted freely and understandingly." In that case, the paper was executed by an aged and infirm man, who had been the plaintiff's client for many years, and for whom the plaintiff then acted as general agent, which paper extended back thirteen years, giving the plaintiff an annuity of one hundred dollars per year for each year during that time, payable with interest. The court held that there was not sufficient evidence, on the principles above stated, to sustain the referee's report in favor of the plaintiff, and ordered a new trial. The reporter's note at the foot of the case states that the case was retried, report was again had in favor of the plaintiff, a second appeal taken to the General Term, where the report of the referee was sustained, the court holding that there was sufficient evidence on the second trial to sustain the case upon the principles before stated. The

reporter adds that the case had been appealed to this court, on the ground that it was not changed by the evidence on the second trial.

In *Sears* v. *Shafer* (2 Seld., 268), the rule is thus stated: "A court of equity interposes its benign jurisdiction to set aside instruments executed between persons standing in the relation of parent and child, guardian and ward, physician and patient, solicitor and client, and in various other relations in which one party is so situated as to exercise a controlling influence over the will and conduct and interests of another. In some cases, undue influence will be inferred from the nature of the transaction alone; in others, from the nature of the transaction and the exercise of occasional or habitual influence." The widow, in that case, having an interest in three farms, being in very feeble health, was induced by her brothers, upon whom she always relied for advice, to convey the farms to them, and without any consideration, except the recital of an intention (in the papers prepared by them) to devise the farms to them in fee. It was alleged that the conveyance was obtained by fraud and undue influence; and there was evidence sustaining the allegation. The court set aside the deed, as having been obtained by undue influence, through the means of the confidential relations of the parties. In each of the cases cited, great numbers of authorities are quoted, sustaining the views announced.

The English cases hold substantially the same doctrine, viz., that while a bargain between attorney and client, or principal and agent, is viewed with great jealousy and suspicion, and its entire fairness must be shown by the party claiming the benefit of it, there is no inexorable rule pronouncing its illegality. Such was the case of *Hatch* v. *Hatch* (9 Vesey, 292), where a conveyance by a deed to her guardian, was set aside, after a lapse of many years and under circumstances of great hardship. The judgment was upon the ground of fraud, the court holding that the ward, a girl of twenty-one, had no knowledge of the value of her estate, while her guardian must have understood it perfectly, and that

there was no proof that he gave her any information upon the subject.

In *Pratt* v. *Barker* (1 Simons, 1), the court refused to set aside a voluntary deed executed by an old and infirm man, in favor of a person who had attended him as a surgeon, and received the dividends of some stock for him, it appearing that the nature and effect of the deed were fully explained to the grantor by his solicitor before he executed it, and that no undue influence had been exercised over him. In deciding that case the vice-chancellor says: "In the case of *Huguenin* v. *Barcley* (14 Vesey, 273), the defendant was the confidential friend and adviser of Mrs. Huguenin, and was held bound to establish, not only that she executed the deeds of gift voluntarily, but with full knowledge of their nature, effect and consequences. In *Griffiths* v. *Robins* (3 Madd., 191), the donor was eighty-four years of age and nearly blind, and dependent upon the assistance of the defendant who had married her niece, and I then held that to maintain a gift under such circumstances, the defendant must establish by the intervention of a third person, that the gift proceeded from the free will of the donor, and was fully understood by her."

In 9 Price, 169, the court set aside the conveyance, saying, that where the parties stand in the relation of attorney and client, so immediately is the former under the eye of the courts, and so anxiously do they watch the interests of the latter, that although the voluntary gift of the client may be supported, it is so indispensably necessary to show it to be *bona fide* and free from the imputations of any of the above objections, as to render it in some sort essential to its validity and stability, that some other professional man than the donee should have the conduct of it, or, at least, that some indifferent third person should be privy to the whole transaction.

The same principle is set forth in *Harris* v. *Tremenheere* (15 Vesey, 34), where the gift from the principal to the attorney was sustained.

The case of *Montesquieu* v. *Sandys* was a similar one, and where the gift was upheld.

In *Casborn* v. *Barsham* (2 Beavan, 76, 17 Eng. Ch.), the master of the rolls lays down the principle as given above, and adds, "where undue influence is to be inferred from the nature of the transaction, or where the transaction itself is contrary to the policy of the law, I apprehend that it is the province of the court to determine the point, and that the question ought not to be sent to the jury." There does not seem to be any particular point in this remark, as in that case the jury, by their finding, negatived all fraud, and by their finding affirmed the charge of undue influence. The first finding was sustained by the court, but the court held that there was no sufficient evidence of undue influence, and ordered a new trial. In that, as in all the other cases cited, the decision turned upon the facts established, and not upon any irresistible presumption of law.

The clear and distinct findings of fact in the present case must settle the question before us, and entitle the defendant to an affirmance of the judgment.

LEONARD, J. There are no elements of public policy to be served by disturbing the gift of Miss Smith. The facts have been found carefully by the learned justice before whom this case was tried.

The donor, though advanced in years, was of sound mind. It was the voluntary act of her own mind, without any solicitation or influence exercised by the donee to produce the result.

The donee was the friend of the deceased, much her junior, and she desired to afford herself the gratification of making the gift to him which she did make. There was no agency or confidential relation existing between the parties. There was no bargaining—no pretense by the donee that the donor owed her—nothing, indeed, from which any inference can be drawn that the intention to make the gift did not proceed wholly from the donor. She disclosed her intention to her

legal adviser. He endeavored to dissuade her, but she evidently remained fixed in the intention to make the gift.

She had the right to do so, and I can see nothing in the facts found, or even by referring to the evidence in the case, which will affect the validity of the gift either upon grounds of public policy or of implied fraud. The grounds upon which such gifts are rescinded, or held invalid by the courts, are wanting here.

The judgment should be affirmed, with costs.

All the judges concurring,

Judgment affirmed.