By the Court.—Freedmah, J.
The referee came to the conclusion that upon the whole evidence, Moore had failed to establish such a fraud on the part of Owen as was necessary to'avoid, the agreement made between Jardine and Owen, as to the latter’s additional compensation. In this conclusion he would have been correct, if Owen and Jardine, in making said agreement, had dealt with each other as strangers upon a footing of equality, and not as attorney and client. But it was the latter relation that then existed between them, and the fact of the existence of that relation calls for the application of a different rule.
The Code, in extending the rights of attorneys by allowing them to contract with their clients,as to compensation beyond the allowances given by statute, relieved attorneys from a disability which before existed, but did not relieve their dealings with their clients from the supervision which the courts have at all times exercised. The reasons for that supervision exist as strongly as ever, and the Code has in no respect changed or interfered with them. Whenever a contract between an attorney and client gives benefits or advantages to the attorney, the court will scrutinize it with great care. All presumptions are in favor of the client, and against the propriety of the transaction, and the burden of proof is upon the attorney to show, by extrinsic evidence, that all was fair and just, and that the client acted understandingly (Brock v. Barnes, 40 Barb. 521; Brotherson v. Consalus, 26 How. Pr. 213 ; Evans v. Ellis, 5 Denio, 640; Nesbit v. Lockman, 34 N. Y. 167; Quinn v. Van Pelt, 36 N. Y. Sup. Ct. R.).
In Ford v. Harrington (16 N. Y. 285), the court of appeals went even so far as to hold, that where an assignment, in fraud of creditors, is made to an attorney, in accordance with and pursuant to his advice, and presumably in consequence of such advice, the maker *164 of the assignment may recover back for his own use the property transferred, and that such a case constitutes an exception to the general rule, that the fraudulent grantor cannot undo, for his own benefit, the transfer he has made.
And in Burling v. King, it was recently held by the general term of the supreme court for the first department, that the court should not decree the specific performance of a contract, which secured to the attorney not only a measure of compensation for professional services, but also an interest, virtually as owner, in the subject matter of the litigation, and which, although valid under section 303 of the Code, was not in all respects so entirely fair as to command the approbation of a court of equity.
What are the facts in this case % In 1867, Robert Jardine entered into a contract with the mayor, aider-men and commonalty of the city of New York for regulating and paving part of Second-avenue, and in 1868, he executed and delivered to the plaintiff, Edward Haight, for the purpose of securing the repayment of advances to be made by plaintiff, an assignment of all his right, title, and interest, in and to all the moneys due and to grow due on said contract. In the early part of September, 1869, Haight, the plaintiff, instructed his attorney, Eugene H. Pomeroy, to commence an action against the corporation of the city of New York for the amount due to Jardine under said contract. Jardine. was sent for, and conferences were had with him, and Pomeroy commenced to draw the papers necessary for the commencement of the action. While so engaged, Jardine notified him, that he had got a man, one John Owen, who could get the money in thirty days for him, that he had informed Mr. Owen of Haight’s application, and that in his arrangement with Mr. Owen, Haight’s interest would be protected. Thereupon, October 28, 1869, Jardine, by John Owen, his attorney of record,, *165 commenced an action against the corporation to recover the sum of forty-nine thousand four hundred and forty dollars, alleged to be due under the contract. On January 24, 1870, Jardine executed an absolute and. irrevocable transfer of his claim to Owen, and on the same day Owen executed and delivered to Jardine, a declaration that he held the assignment in trust; that the sum of twenty thousand dollars, or, in case such sum should not be recovered, then such sum as should be recovered should be paid to Jardine ; that all sums in excess of twenty thousand dollars should be retained' by him for his services ; and in case twenty thousand dollars should not be recovered, then that he should receive five per cent, for his services.
Immediately after the execution of this declaration Jardine transferred it to the defendant, Moore, to whom he was then indebted in the sum of eight thousand dollars, with interest from January 18, 1867, and by parol authorized Moore to hold the declaration as security for his debt, and to apply to the payment thereof all moneys coming to Jardine under the declaration.
By this arrangement Owen secured to himself not only compensation for professional services to be rendered, but also an interest, virtually as owner, in the claim to be collected. As the final recovery amounted to the sum of thirty-one thousand five hundred and thirty .dollars and seventy-one cents, Owen’s share would have been eleven thousand five hundred, and thirty dollars and seventy-one cents. But the sum guaranteed to him by this arrangement did not satisfy him. Having received from the referee who tried the cause, an intimation of almost the precise amount to be awarded by the report, to wit, about twenty-six thousand dollars, exclx;sive of costs, for the evidence points irresistibly to that conclusion, he told Jardine that they would not get more than about twenty thousand dollars; that his compensation on that amount, as *166 agreed upon, was entirely insufficient, and that, he wanted an additional five thousand dollars. As Jar-dine did not at once accede to this demand, Owen informed him that, in case of refusal, he, Owen, could have the judgment entered up in his own name and could then collect it. This threat, for a threat it was, silenced Jardine, and he consented. He also assisted Owen to procure Moore’s assent to it. But why should he, why should Moore as his creditor, be bound by this new arrangement without proof of a consideration to sustain it %
It really.does not matter much, whether Owen, when he made the representation, knew it to be untrue or not, nor whether, or not his purpose was to defraud Jardine. The representation was a communication of a confidential character from attorney to client, upon* the truth of which the client had a right to rely, and evidently did rely. If untrue, the attorney will not be permitted to reap a benefit therefrom. That it was untrue, is beyond doubt. Where, therefore, in addition to the presumption of unfairness attaching to the original agreement, and in addition to the objectionable means by which the supplemental agreement for five thousand dollars additional compensation was procured, it appears, as it does in this case, by uncontradicted evidence, that a fee of two thousand five hundred dollars, exclusive of taxable costs, would have been a liberal fee, and extreme fee, free from contingency, for all the services rendered by Owen in the action; that in place thereof, .Owen’s successors in interest will at all events receive eleven thousand five hundred and thirty dollars and seventy-one cents under the original arrangement; and that there is no evidence of any services rendered by Owen subsequently to the supplemental agreement for additional compensation, or the value of any such service, the proof on the contrary showing, that whatever services were thereafter- ren *167 dered, were rendered by the attorney of Mr. Haight, the said Haight having been substituted as the plaintiff in the action almost immediately on the rendition of the referee’s report, — a case is made out which, within the decisions above, referred to, calls upon the court to protect the client against the attempt of the attorney to gain an undue advantage over him. Proof of a frill and adequate consideration, actually given, being indispensably necessary, the referee erred in sustaining the supplemental agreement without any such proof being furnished.
Ho sufficient reason exists why Moore, who, as Jardine’s creditor, has so far refrained from enforcing his claim, which now amounts, with the interest accrued théreon, to over twelve thousand dollars, should not have the relief to which Jardine would be entitled on his own application. True, he holds still other security for his claim, and it was for that reason that he stated, on his cross-examination, that he felt no interest in the final result of this action, so far as the additional five thousand dollars claimed by Owen were concerned. But such other security consists in a bond executed to him by Jardine’s wife, conditioned for the payment to him of the sum of eight thousand dollars, and secured by a second mortgage on her own property ; and the evidence shows that by a foreclosure of that mortgage, the property would be completely swallowéd up. Under these circumstances, it would be highly inequitable to allow the property of a confiding wife to be sacrificed for her husband’s debt, to the end that the successors in interest of the husband’s attorney might quietly enjoy the fruits of a professional misrepresentation made by such attorney.
So much of the judgment entered herein on July 26, 1873, as adjudges that the interest of Robert Jardine and his assigns in the sum of thirty-one thousand five hundred and thirty dollars and *168 seventy-one cents, mentioned in the report of the referee, is only fifteen thousand dollars; and as adjudges that the defendant George Moore, in addition to the amount adjudged to him, is not entitled from the said thirty-one thousand five hundred and thirty dollars and seventy-one cents, to the further sum of five thousand dollars, with, interest from January 24, 1870; and as adjudges such five thousand dollars and interest to the representatives and assigns of John Owen ; and as adjudges that their interest hrthe said sum of thirty-one thousand five hundred and thirty dollars and seventy-one cents is sixteen thousand five hundred and thirty dollars and seventy-one cents; and as adjudges any part of said five thousand dollars and interest, part of the said sixteen thousand five hundred and thirty dollars and seventy-one cents, either to the defendants Melinda Owen, Joseph R. Blossom, James M. Rankin, Seth R. Robbins, or the said Melinda Owen, as administratrix, &c., of John Owen, should be reversed, and the order of reference should be vacated, and a new trial ordered as between these parties, with costs to the appellant Moore to abide the event.
Monell, Ch. J., concurred.