## *In re* BARBER'S ESTATE.

### *In re* DURAND.

*(Supreme Court, General Term, First Department.  December 29, 1890.)*

EXECUTORS AND ADMINISTRATORS—ACCOUNTING—EXPENSES AND COUNSEL FEES.

On an accounting by an administrator of an estate, the only asset of which was a deposit in a savings bank, not known to the next of kin for many years, with the interest, amounting in all to $1,670.96, charges exceeding the entire amount were presented by the administrator, chiefly for expenses of journeys, and for services in searching for evidence concerning the claim against the bank, not shown to have been necessary, and for services of counsel, on an agreement to pay him 25 per cent. of the estate, not proved to have been fairly and justly made. There were no debts, and the administration was very simple. *Held*, that such charges should be disallowed.

Appeal from surrogate's court, New York county.

Accounting of Louis V. Durand, administrator of Thomas Barber, deceased. Objections by the next of kin to the account were heard by a referee, who reported that certain charges made by the administrator should be disallowed. From the decree of the surrogate on such report the administrator appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Fred F. Nugent*, for appellant.  *Frederick B. Bailey* and *A. W. Gleason*, for respondents.

DANIELS, J. The estate which was settled by the decree was left by Thomas Barber, who died intestate on the 4th of July, 1838. He left a widow, who died on the 17th of August, 1866. The intestate deposited $125 in the bank for savings in the city of New York. This deposit did not become known to his widow, neither did it to either of his next of kin, until near the time when letters of administration were issued to the appellant, in December, 1885. He had previously endeavored to discover property belonging to the intestate, and had expended money for that object, which was not allowed to him in the final settlement. The amount of money received by him consisted mostly of interest on this deposit. The interest and principal together which passed into his hands as administrator was the sum of $1,670.96. And its management and administration were affairs of the greatest possible simplicity. There were no debts, and no complications whatever, in the proceedings. But, when he presented his petition for the settlement of his accounts, he stated a balance to be owing to himself amounting to $326.55. The estate itself was wholly consumed by charges made, leaving this deficiency after paying the

commissions of the administrator. This statement was of itself sufficient to awaken the suspicion, if not to produce the positive belief, that the administrator had flagrantly violated all the obligations of his trust, and to subject his own unsupported oath to discredit; for it can well be seen that the administration of the estate was so entirely plain as to render all unusual expenses entirely unnecessary. In making up the account, charges were made for the expenses of journeys to Glen's Falls, Rochester, and frequently to New York, from the residence of the administrator, in the state of Connecticut; and also to Milton, on the Hudson river. But there was nothing to be, or which could be, accomplished by these journeys, which correspondence would fail to secure. There was therefore no necessity for creating these charges against the estate. And, as to those for the journeys to Glen's Falls and Rochester, they were divested of all colorable foundation by the other evidence taken on the hearing. The administrator also claimed $10 a day for 54 days' searching for evidence and witnesses concerning the claim against the bank for savings where the money had been on deposit. This was grossly overcharged; for finding whether the intestate had money in either of the few savings banks existing in New York city at the time of his decease was a very plain and easy act to perform. And it in fact proved to be so, as soon as the administrator set about it in anything like a practical or intelligent way; for his inquiries readily discovered the fact. There was no well-grounded excuse for these charges, and they were rightly rejected on the settlement; for persons to whom the administration of the estates of deceased persons are committed are required to observe a reasonable degree of prudence in their management, and to avoid loading the estate with charges and expenditures not necessarily required to be made. That is an obligation which this administrator, as well as his counsel, seem to have wholly overlooked. With the counsel a contract was made by the administrator to pay him for his services 25 per cent. of the estate. It was not in need of that service. The nature of its administration supplies very clear evidence of that fact. There was no proof offered to the contrary, but the counsel stood upon the agreement alone, as a justification for the $417.74 which had been paid to him; and that act of itself betrayed a conscious belief that he was not entitled to the money. The law does not sanction such dealings between the attorney and the person by whom he is employed; more especially where the estate to be charged is the property of others. But, before the bargain can be permitted to stand, it must be proved to have been fairly and justly entered into. *Nesbit* v. *Lockman*, 34 N. Y. 167, 169, 170; *In re Hynes*, 51 Hun, 340, 343. And no inclination existed to make any proof that would protect this charge by this principle. It was therefore justly rejected, as it should be. And so was the charge for the other counsel, by reducing the amount from $100 to $50. It was an abuse of his position for the administrator to incur and make these charges; and his conduct is not entitled to be excused by the statement that he was endeavoring to discover whether the intestate did not have some other property arising out of a seizure and detention of his vessel, at one time, by the French government. The decree allowed the administrator all that, under any sense of justice, he had the right to charge; and it should be affirmed, with costs to each of the respondents.

VAN BRUNT, P. J., concurs. BRADY, J., concurs in result.