### TRAGMAN *et ux. v.* LITTLEFIELD *et ux.*

(*Common Pleas of New York City and County, General Term.* April 4, 1892.)

CANCELLATION OF CONTRACT—FRAUD—UNDUE INFLUENCE.

> On trial of an action by a client against an attorney to set aside, on the ground of fraud and undue influence, a conveyance by the former to the latter, pending the relation between them, the court found as facts that such conveyance was an absolute transfer, made in consideration of professional services rendered by the attorney; that no fraud was intended by either party; that the attorney used no threats or coercion or misrepresentation to the client; that the client had full knowledge of the situation and value of the property, and the attorney fully explained to him the nature and value of the services rendered, and the effect of the deed; that the client acted freely and voluntarily; and that a subsequent general and absolute release by the client to the attorney, executed in presence of a third person, was given voluntarily, without fear or compulsion or the use of deceit or fraud or any force, and with full knowledge by the client of all the attorney's dealings with the property. *Held* that, on these findings, a judgment for plaintiff could not be sustained on appeal.

Appeal from equity term.

Action by Diedrich Tragman and Doris Tragman against Frederick M. Littlefield, to whom plaintiff had conveyed certain real estate, and his wife, Agnes H. Littlefield, to compel a reconveyance of part of said real estate, and payment over of the proceeds of another portion thereof sold by defendants, and the surrender and discharge of a mortgage of a portion thereof to defendant Agnes H. Littlefield. Defendants appeal from so much of a judgment in favor of plaintiffs as awarded to the latter the proceeds of the property sold, and directed a cancellation of the mortgage. Reversed.

Argued before DALY, C. J., and BOOKSTAVER and PRYOR, JJ.

*Frederick M. Littlefield*, ( *Wm. B. Hornblower*, of counsel,) for appellants.
*Edward H. Moeran*, ( *W. J. Leitch*, of counsel,) for respondents.

PRYOR, J. A detail of the complex circumstances recited in the pleadings and developed by the findings is unnecessary to exhibit the reasons of our decision; but for that purpose it suffices to state that, in substance and effect, the action is by a client against an attorney, on the ground of fraud and undue influence, to set aside a conveyance by the former to the latter pending the relation between them. The appeal is before us on the judgment roll alone, and hence the only inquiry is whether the judgment can stand consistently with the facts found. If the contention of the appellants were merely that the findings of fact are insufficient to sustain the conclusions of law, then, in the absence of the evidence, we should presume that it was adequate to authorize inferences of fact necessary to support the judgment. But the position of the appellants being that the facts, as found, negative the conclusions of law, it follows inevitably that, in the event of such repugnancy, we have no alternative but to reverse the judgment. The test propounded by the law of this state for determining the validity of a transaction between client and attorney, involving adverse interests, is as well established as it is easy of application. Because of the fiduciary relation between the parties and the commanding position of the attorney, any dealing between them, in which the interest of the client may have been betrayed, is *prima facie* fraudulent and void; but the presumption is provisional only, and may be overcome by contrary proof. The burden is upon the attorney to adduce such evidence. But what is the evidence that will thus avail to repel the presumption against the transaction, and re-establish its validity? We answer, such proof as demonstrates good faith and fair conduct on the part of the attorney, and free volition and intelligent action on the part of the client. If the attorney be guilty of no fraud or undue influence, and if the client, comprehending clearly the circumstances of the situation, be moved only by the impulses of his own will, the transaction, though in the event favorable to the attorney and unfavorable to the client, cannot be impugned, even in a court of equity. The principle is abundantly sustained by authority and illustrated in adjudged cases. *Whitehead* v. *Kennedy*, 69 N. Y. 462; *Haight* v. *Moore*, 37 N. Y. Super. Ct. 161; *Mason* v. *Ring*, 3 Abb. Dec. 210; *Post* v. *Mason*, 26 Hun, 187; *Hitchings* v. *Van Brunt*, 38 N. Y. 335, 342; *Taylor* v. *Bemiss*, 110 U. S. 42, 45, 3 Sup. Ct. Rep. 441; *Brock* v. *Barnes*, 40 Barb. 521; *Jennings* v. *McConnel*, 17 Ill. 148; *Wharton* v. *Hammond*, 20 Fla. 934; *Nesbit* v. *Lockman*, 34 N. Y. 167; *Cowee* v. *Cornell*, 75 N. Y. 91, 100. In *Brock* v. *Barnes, supra*, an annuity by a client to an attorney was sustained upon proof that "all was fair, and that the client acted freely and understandingly." Note, p. 536. In *Post* v. *Mason, supra*, a legacy to a lawyer was upheld upon proof that "the testator acted with full knowledge of all the surrounding circumstances, and that the transaction was free from all fraud and undue influence" on the part of the attorney. In *Nesbit* v. *Lockman, supra*, the action was to set aside a gratuitous conveyance from a client to an attorney. The trial court found as a fact "that the assignment was a gift, freely and voluntarily made, without any fraud, deceit, or undue influence on the part of the donee, or advantage taken by reason of his business relations, and without suggestion or inducement on his part, but of the donor's own free will and purpose." On review, the court of appeals said: "The presumption is against the propriety of the transaction, and the *onus* of establishing the gift or bargain to have been fair, voluntary, and well understood rests upon the party dealing;" but, the exigency being answered by the proof, the judgment for the defendant was affirmed, as a necessary legal corollary from the facts found. The court added: "The English cases hold substantially the same doctrine, viz., that while a bargain between attorney and client is viewed with great jealousy and suspicion, and its entire fair-

ness must be shown by the party claiming the benefit of it, there is no inexorable rule pronouncing its illegality." In a more recent case (*Cowee* v. *Cornell, supra*) the court of appeals lay down the rule thus: "Whenever the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, then the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary, and well understood." As in *Nesbit* v. *Lockman, supra,* the single and the decisive question is, do the facts found, by necessary inference of law, displace the presumption of invalidity attached to the transaction from the relation of the parties? In determining the effect of findings of fact, the defeated party is entitled, if they be conflicting, "to the benefit of those most favorable to him, in aid of his exceptions to the conclusions of law." *Bonnell* v. *Griswold,* 89 N. Y. 122; *Schwinger* v. *Raymond,* 83 N. Y. 193.

The learned trial judge found, as facts, that the conveyance to the defendant by the plaintiffs "was an absolute transfer, made without any condition whatsoever;" that its consideration "was for professional services rendered by the defendant of the value of five hundred dollars;" that the defendant "had no notice of any fraudulent intent of the plaintiffs to defraud their creditors;" "that no fraud was intended at the time of the deed by either the plaintiffs or the defendant;" that "the deed to plaintiffs was not made to hinder, delay, or defraud creditors;" that the defendant "did not participate in any fraud, if any, of the plaintiffs;" that the defendant "did not intend, when he took the deed of the Tragmans, to hinder or delay their creditors;" that "no secret trust was intended to be created by the defendant in favor of the plaintiffs;" that "the defendant, at the time of his purchase, used no threats or coercion or misrepresentations to the plaintiffs;" that the sale by the plaintiffs to the defendant "was made with full knowledge of the situation of the properties and their value;" that at the time of the conveyance "the defendant explained fully to the plaintiffs the situation of the properties, and his inability to secure any consideration from his creditors, and also the nature of his services and their value;" "that the plaintiffs knew that the deed gave defendant the absolute title;" that the deed "was explained by defendant to plaintiffs in Wiley's presence;" that in the conveyance to defendant, plaintiffs "acted freely and voluntarily."

While there is no specific finding that the consideration of the conveyance was adequate, that is the necessary deduction from all the facts. Among the conclusions of law the learned trial judge found that "the transactions between plaintiffs and defendant were honest, and in good faith, and free from actual fraud or imposition or undue influence on the part of the defendant;" that "the deed was founded upon a good and valuable consideration;" and that "it was not made with intent to hinder, delay, or defraud the creditors of the plaintiffs." From these findings it results, as an irresistible inference of law, that the conveyance to the defendant is unimpeachable, and his title to the property absolute and indefensible.

Another and an independent defense interposed by the answer, and established by the findings, of itself makes a recovery by plaintiffs a legal impossibility. Subsequently to the transaction of the sale and conveyance, the defendant, out of abundant caution, took from the plaintiffs a general and absolute release, as to which the learned trial judge found that it "was given to the defendant voluntarily, and without fear or compulsion," and that the defendant "practiced no deceit or fraud or used any force to obtain it;" that it "was sufficiently explained," and executed in the presence of a third per-

son; and that at the time of its execution the plaintiffs "had full knowledge of all defendant's dealings with the properties." Surely, further argument is not needful to show that, in view of the findings, the judgment cannot stand.

Judgment reversed, and new trial, costs to abide event.