■ BEULAH K. BASSINE, Appellant, v. CHARLES C. BASSINE, Respondent.— Judgment, Supreme Court, New York County, entered on December 20, 1972, affirmed, without costs and without disbursements, on the opinion of Kirschenbaum, J. at Trial Term. Concur — Stevens, P. J., Lane, Tilzer and Macken, JJ.; Steuer, J. dissents in the following memorandum: I disagree to a limited extent with the disposition. It is not feasible to allude to all the facts in this multi-volume record. Nor is it possible to set out, except in the broadest terms, the grounds for the resolution of factual disputes. Briefly, the relevant facts are as follows. The parties are husband and wife. In 1936 the husband, then an employee, decided to go into business for

himself. He calculated his capital needs at $25,000. Of this sum he raised $20,000 and his wife contributed the remainder. For this she received a one-fifth interest in his business. It is her claim, set forth in the first cause of action, that the agreement was for a one-fifth interest not only in the corporation which was then founded but in any succeeding enterprise in which the defendant husband subsequently engaged, and she seeks an accounting. I agree with the trial court and my colleagues that the subsequent history of events completely belies any such contention. The remaining causes of action arise out of what has been styled in the litigation as the 1966 transaction. At that time the husband's business had prospered to a phenomenal degree. His assets and those of his family were represented by stock in a family holding company called the Kardell Corporation. His holdings at the time were valued at $17,000,000, his wife's at $8,000,000. The remaining stockholder was a trust for the benefit of the parties' two children. The value of Kardell stock was entirely derivative. Its asset was stock of Spartans Industries, Inc., a publicly owned merchandising company which the defendant managed and controlled. The Spartans stock owned by Kardell was unregistered and could not be sold without S. E. C. approval. Kardell stock had no market. At that time the parties jointly had made pledges of charitable contributions in very large sums totaling some $3,500,000, and the defendant was concerned about redeeming those pledges. This was the state of affairs when the 1966 transaction was entered into and effectuated. By its terms the plaintiff wife converted her shares of Kardell into Spartans stock, which was registered. With the proceeds she first paid the capital gains tax on the transaction, amounting to $1,200,000. She then made good on the charitable contributions to the tune of $2,500,000, and another $1,500,-000 was transferred to the Bassine Foundation to pay existing and contemplated pledges of contributions. She then paid outstanding debts of her husband of about $300,000. The balance she kept. Her claim is to be reimbursed for these expenditures. In my opinion the proof admits of no other conclusion than that the 1966 transaction was developed by the husband's accountants at his direction and request, and that the plaintiff entered into it at his urging and upon representation to her that a similar liquidation of defendant's Kardell holdings would invoke a much larger tax imposition. This representation was a half truth. It was true to the extent that a complete liquidation of either party's holding would result in the smaller capital gains tax as opposed to income tax, and a liquidation of defendant's much larger interest would involve more tax. It was false to the extent that a partial redemption could be effected on a capital gains basis if Kardell distributed its profits. On the other side of the coin, plaintiff was not coerced and she could have had the benefit of professional advice had she sought it. Likewise, she was comaker of the charitable pledges and a substantial part of the moral obligation to pay was hers. And as far as the tax on the transaction is concerned, she was the beneficiary of the conversion, even though the immediate benefit was not completely realized. It would appear that the circumstances of the relationship of these parties conclusively bespeak a fiduciary relationship. For a fiduciary to establish that benefits were conferred on him in the fantastic manner of this transaction would require a very high degree of proof that it was a free will offering. The authorities are unanimous whenever the question has been raised. There is an unbroken line of authority from 1866 (*Nesbit* v. *Lockman*, 34 N. Y. 167). As is usual in cases between spouses, each party offers convincing evidence why the other should not be believed, without showing that he or she should be credited. Without

seeking to resolve this dilemma, the fantastically unfair provisions of the 1966 transaction indicate an overreaching. In so characterizing the nature of the parties' participation in the 1966 transaction, a legal rather than a moral conclusion is expressed. No intent to defraud other than to accomplish what in defendant's own mind was the best for all concerned is discernible. That, however, does not afford the leeway to do what he did. His judgment is not the last word, and when it contravenes his wife's rights it must yield. The second, third and fourth causes of action seek recovery of damages, the second and third for the amounts paid toward the charitable contributions and the sum devoted to paying the defendant's debts, the fourth for the tax on the conversion of the Kardell stock. The legal basis for the last cause of action is an alleged promise. Trial Term's finding of no such promise, and the absence of an equitable right to reimbursement, lead to the conclusion that as to this cause of action there should be an affirmance. The record does not give sufficient facts to warrant an assessment of damages. Clearly plaintiff as well as defendant was a pledgor of the charitable contributions. She was not defrauded into paying her fair share either of the contributions made or to be made. What that share was does not appear. I would remand for the purpose of taking proof on that subject. The balance of the payments made were incontrovertibly made for the defendant's benefit and on his behalf. Short of a gift, which was not established, she should be reimbursed.