ALEXANDER DUNN *vs.* CALVIN RECORD.

*Attorney—in dealing with client must use utmost good faith.*

An attorney who purchases of a client a claim which is the subject of litigation, in case the propriety of such purchase is questioned, is bound to show the perfect fairness, adequacy, and equity of the transaction.

ON EXCEPTIONS AND MOTION FOR A NEW TRIAL by the defendant. ASSUMPSIT. The exceptions were to the allowance of an amendment. The writ originally contained a count upon an account annexed, and a general money count. The former consisted of a single item for cash received upon a judgment in favor of Mr. Dunn against the Grand Trunk Railway Company recovered at the April term, 1869, of the superior court, and interest thereon, $2,377.66; this was stricken out and a new account annexed, setting out this judgment more particularly, stating the debt, costs and interest separately, the aggregate amount ($2,377.66) remaining unchanged.

By the testimony it appeared that, upon the twenty-second day of July, 1868, Mr. Dunn was severely injured by the saloon car, attached to a freight train upon the Grand Trunk Railway, in which he was riding, being thrown from the track; that he applied to Mr. Record for advice, who, after some hesitation and consultation with T. H. Haskell, Esq., of Portland, concluded to undertake the case, and suit was brought for Mr. Dunn against the corporation, by writ dated December 28, 1868, entered in the superior court for Cumberland county at its February term, 1869, and tried at the ensuing April term, resulting in a verdict for the plaintiff of $1,800. The defendants took exceptions to the rulings of the justice of the superior court, relative to their defence, that Mr. Dunn was improperly riding upon a freight train; which exceptions were overruled—see 58 Maine, 187—June 5, 1871, and at that term of the superior court judgment was entered upon the verdict, the in

terest accrued to that date making the amount of damage $2,032.50 and the costs were $51.44, for which sums execution issued June 9, 1871. The writ was made and entered by Mr. Haskell who attended to the case in court up to the time of trial, when it was opened to the jury by him and closed by Mr. Record. Its trial did not occupy an entire day. It was argued before the law court by Mr. Haskell, who testified that the plaintiff came twice to his office about the case, while Mr. Dunn denied that he ever assented to the employment of any additional counsel by Mr. Record, and that he never knew of Mr. Haskell's engagement. While the cause was pending before the law court, to wit, on the nineteenth day of November, 1870, Mr. Record paid Dunn three hundred dollars, and took an assignment of the claim and action against the Grand Trunk Railway Company. The plaintiff denied the reception of this money and all knowledge of the assignment, though admitting the signature to be apparently his. The defendant said it was finally taken by him after much importunity by Mr. Dunn, who was going to Connecticut. Its execution was proved by a respectable gentleman of Auburn who had attested it as a witness. While testifying in his own behalf Mr. Record said, that at that time, he had an inkling of what the result of the company's exceptions was likely to be, and that the chief justice had drawn an opinion overruling them, but that the corporation's counsel, the late Hon. Phineas Barnes, had expressed a determination to obtain a review of the case and reversal of the judgment upon the facts, if the law was held against his clients; for this reason he told Mr. Dunn, who could not be made readily to understand technical terms and process, that the matter was still pending after the execution had been satisfied. A deputy of the sheriff for Cumberland county collected the execution, a few days after it issued, paid from its proceeds to Mr. Haskell his bill ($456.08) and the balance ($1,627.86) to Mr. Record. Subsequently to this, Mr. Record let Mr. Dunn have a hundred dollars at one time and eighty-three at another, which he claimed were merely gratuities, the execution and its proceeds being wholly his own.

One of the plantiff's counsel testified that, in a conversation with Mr. Record, prior to the bringing of the present action, that gentlemen told him he took the assignment for the protection of Mr. Dunn; the defendant denied having made this statement, but admitted he expressed his willingness to do right by Mr. Dunn.

The jury returned a verdict for the plantiff for $1,373.28, which the defendant moved to have set aside as against law and evidence, and clearly excessive in amount.

*Enos T. Luce* and *L. H. Hutchinson,* for the defendant.

*Pulsifer, Bolster & Hosley,* for the plaintiff.

PETERS, J. The amendment was allowable. It is argued that the amended count is upon a judgment. It is not. It is a count for money due to the plaintiff on account, and a judgment is merely referred to as the source from which the money sued for was derived.

The first question under the motion is, whether the assignment from the plaintiff to the defendant was valid or not. The plantiff denies that it was valid, because such a kind of claim is not legally assignable. *McGlinchy* v. *Hall,* 58 Maine, 152. The defendant contends that the assignment, as between the parties, would be effectual, after the money was collected upon the claim assigned. But aside from mere technicality, and upon the broader ground of justice and equity, we are very clear that this assignment cannot be upheld. The law is very watchful of the rights of a client, as between him and his attorney. It distrusts purchases by the one of the other. It requires an attorney to be satisfied with compensation, without seeking to obtain speculative bargains for his services. An attorney is not made incapable of purchasing property of his client, which is the subject of litigation. But he can take no advantage whatever from his confidential relation. He must impart to his client all the knowledge he has about the matter. Judge Story, (in Eq. Jurisprudence) says, (citing earlier authorities) that the burden is upon the purchaser, and not upon the client,

to establish the perfect fairness, adequacy, and equity of the transaction. Lord Brougham expresses it in this way: "in a word, standing in the relation he does to the other party, the proof lies upon him to show that he has placed himself in the position of a stranger; that he has cut off, as it were, the connection which bound him to the party giving or contracting; and that nothing has happened which might not have happened, had no such connection subsisted." In *Gibson* v. *Jeyes*, 6 Vesey, 267, Lord Eldon says: "if the attorney will mix with the character of attorney that of vendor, he shall, if the propriety of the transaction comes in question, manifest that he has given his client all that reasonable advice against himself that he would have given him against a third person." Tested by these rules, this assignment cannot for a moment stand. The parties stood upon an unequal footing. One is a learned, the other an ignorant man. The one could calculate the chances of success in the then pending suit, and (according to his impression) already had a favorable inkling about it, which he did not disclose; while the client was all in darkness about it. The consideration was an inadequate one, whether it was wise or not to pay it. The defendant did not act upon the assignment as equitably conclusive, but, according to his account of their transactions, paid money to the plaintiff afterwards. From this, as well as from the well known honorable character of the defendant, we have no doubt that he never intended to use the assignment as a finality between the plaintiff and himself, but uses it as a protection, as far as he can, against what he regards as an unfair and ungrateful attempt of the plaintiff to take from him a larger share of the proceeds of the suit than he is entitled to have.

But we are satisfied that the consideration paid for the assignment should be allowed to the defendant as money advanced. And we are satisfied that he did advance it. His own oath, corroborated by the writing itself, controls the other evidence, upon this point. The plaintiff's denial lacks frankness. Even if the defendant did not communicate to Mr. Bolster, in direct words, the fact that he had paid the plaintiff $300 for the demand, still, he relied

Dunn v. Record.

upon the assignment as valid, which was tantamount to it. While Mr. Bolster was seeking to get statements from the defendant, it is evident that the defendant was not, under the circumstances, disposed freely to make them. Under such circumstances, it was an easy thing for honorable gentlemen to misunderstand each other.

Then should the defendant be allowed the $183, which he claims to have paid? Whatever our belief and predilection about it may be, a jury could not be regarded as in error, by believing that the evidence, upon these items, preponderated the other way. The burden is upon the defendant to prove them. He has no receipt, or charge upon book account, or any thing but his oath to support a charge denied by the oath of the other side. His loss of these sums may be imputable only to his own neglect to take the proper evidence that he paid them. What the minor item was, paid for a tax, does not appear.

The sum recovered against the railroad company was $2,083.94, as of June 5, 1871. Deducting Haskell's charges and the $300, and reckoning an interest account, and it will appear that the jury allowed (as near as may be) the sum of one hundred and fifty dollars for the defendant's professional services. While if the matter was left to us, we might allow more than that sum for all the defendant's risks and services, still we cannot regard the result arrived at by the jury as one that should be superseded. It must be borne in mind, that the whole costs of counsel in that suit was a little short of $600. It is not perceived that it was necessary to have two counsellors in the case; at all events, at an expense so extraordinary. The case itself, although important, was yet a simple one. It required no extensive preparation. It was tried in less time than a day. The plaintiff was the only witness for himself, outside of the medical witnesses, and they were produced in court by the other side. It would not be strange, if the jury in this case regarded the defendant responsible for some degree of laches in the management of the other suit, for the expenses consequent upon it.                    *Exceptions and motion overruled.*

APPLETON, C. J., DICKERSON, BARROWS and VIRGIN, JJ., concurred.