## Case No. 639.

### ATWATER v. HADLEY et al.

[Syllabi, 117.]

Circuit Court, D. Minnesota. Dec. Term, 1876.

EQUITY — RESCISSION AND CANCELLATION OF CONTRACTS— FIDUCIARY RELATION — UNDUE INFLUENCE.

The rule that courts will carefully scrutinize all transfers of property between those occupying fiduciary relations, and vacate any such transfer that is not entirely fair and equitable on the part of the person holding a position of trust and confidence, applied to the facts in this case.

In equity. Julinah P. Atwater was the owner in June, 1875, of notes and mortgages of the value of $3,100, which she placed in the hands of "Hadley's Law and Collection Agency" for collection; R. S. Hadley assuming to act for the same. On the death of one Seely, a brother-in-law, she claimed to own with her brothers and sisters an interest in the farm and farm property previously occupied by the deceased. A claim to the same was also made by the father and brothers of deceased. Propositions and consultations for settlement were frequently had and made during the summer of 1875, and for an amicable adjustment between the claimants, in which R. S. Hadley participated, acting as

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]
2 FED. CAS.—13

the attorney and adviser of Julinah P. Atwater representing herself, and the interest adverse to the Seely heirs. C. W. Hadley acted at one time in giving advice to Julinah P. Atwater, and in July the firm of Cogswell & Johnson were also employed as counsel to aid Julinah in a settlement. No arrangement was consummated, although concessions were made by the Atwater claimants, and on the night of July 30th or 31st, Julinah had agreed to an adjustment whereby the interest she represented would be satisfied with the amount of $2,500, and a contract on that basis was ready to be prepared for execution, which was finally objected to by the Seelys. When this last interview had broken off, it was communicated to the plaintiff and her brother, that a purchase of this adverse interest would be made by C. W. Hadley for the sum of $2,500, including the notes of the value of $3,100, and the claim to the other property represented to be of the value of about $5,000. This purchase was finally completed, and as it appears from the testimony, R. S. Hadley was a party to the purchase, although not appearing in the papers drawn up. He and C. W. Hadley were to take the property upon the following terms arranged between themselves: R. S. Hadley was to contribute $1,300, taking as his share the notes and mortgages admitted to be of the value of $3,100, and C. W. Hadley to have the interest in the land for the sum of $1,200. The terms of the sale were $1,000 cash, the notes and mortgages to be assigned to C. W. Hadley immediately, and a certificate of deposit in the First National Bank of Owatonna for the sum of $1,500, payable when a quit claim deed was delivered to the bank, executed by the Atwaters, brothers and sisters, and also a power of attorney from Julinah to C. W. Hadley to take possession of the farm and other property. The $1,000 cash was paid, and the certificate of deposit, as above, specifying on its face the conditions, was given to the plaintiff, and the other papers were drawn up and taken to be executed by the other parties who were absent. It appears that this sale was not entirely satisfactory at the time of the transfer of the notes and mortgages by the plaintiff, and is charged to have been assented to on account of the anxiety of mind and distress the plaintiff was in from the repeated failures to accomplish an amicable adjustment with the Seely heirs, and from apprehension of a criminal proceeding being instituted against her by these heirs. Cogswell & Johnson were not consulted in regard to this purchase by the Hadleys, and whenever their advice had been previously given in regard to the manner of a settlement with the Seely heirs, they had not approved of any concessions being made by the plaintiff of her rights, and of those of her brothers and sisters to the Seelys; and they regarded her claim undoubtedly valid to all the property. C. W. Hadley in his interview with the plaintiff gave her to understand that the Seely heirs could recover from her the notes and mortgages which she owned, and that there had been so much talk against her that she did not stand very well in the community. He also intimated that if the Seelys had him for their adviser, he would find a way to obtain possession of the property. R. S. Hadley at the time of the transfer of the notes and mortgages expressed himself as regretting the purchase by his son C. W. Hadley, when in fact he was a party to the purchase, as above stated. The plaintiff after the bargain was closed paid the "Hadley Agency" $50 for services rendered as her attorneys and advisers. She seeks in this suit to set aside this sale to the Hadleys.

It is urged by the defendants: 1st. That the fiduciary relation between the parties had ceased when the purchase was made. 2nd. That the sale was a fair and equitable one, and made by the plaintiff with a full knowledge of all her rights, and with no idea of obtaining any advantage over her on the part of the defendants.

Chas. A. Clark, for plaintiff.
Gordon E. Cole, for defendants.

NELSON, District Judge. It must be conceded that the relationship of attorney and client, or principal and agent, existed, and was so understood by the parties, up to the time of the purchase. The burden is on the defendants to establish the fairness and equity of the transaction. The careful scrutiny which is bestowed by courts upon sales of this character between persons occupying fiduciary positions and their confidants is in accordance with public policy to prevent public mischief. The testimony in this case in my opinion brings it within the principle where the strict rule should be applied, and calls upon the defendants to establish the following characteristics without which this transaction cannot be sustained. The sale must have been fair, the price adequate, and the conduct of the defendants equitable; unless such was the case, the decision cannot be doubtful. That the price paid is wholly inadequate must be conceded. The value of the notes and mortgages is admitted to be $3,100, and the title to the realty was evidently considered good by the defendants. The letter of C. W. Hadley written immediately after the sale expresses a disappointment that the deed upon which it was expected the plaintiff's title could be enforced failed to be in conformity with the laws of the state of Minnesota, and shows that at the time of the purchase he regarded it conclusive upon the title. R. S. Hadley participated in the last effort between the plaintiff and the Seelys to settle the controversy, and it is stated by her that she would have yielded to a small demand on the part of the Seelys which broke up the interview, had not opposition been made by him. The defendants knowing the firm of Cogswell &

Johnson had been employed to aid in bringing about an amicable arrangement with the Seelys, never informed them of a contemplated purchase of the property, and did not consult at all with them as to the fairness and equity of the transaction. It was incumbent on the defendants to have fully communicated to these counsel their determination, and a failure to do so was unfair to the plaintiff, and not in accordance with the relationship existing between the parties. There can be no doubt that an advantage was obtained by the defendants, and so regarded by them.

The plaintiff regretting the step taken, offered to pay a bonus for the surrender of the notes and mortgages and cancellation of the sale, but this was declined for the reason that the notes had been taken by R. S. Hadley to be sold, and had at that time probably passed out of the control of the defendants or either of them. The testimony conclusively shows this statement to have been untrue. Without further comment I am satisfied upon a full examination of the evidence the complainant is entitled to the relief asked for. Authorities consulted: 9 Pick. 231; Gibson v. Jeyes, 6 Ves. 266; 40 Barb. 521; 2 Hare, 60; White & T. Lead. Cas. Eq. (3d Amer. Ed.) 202; 1 Story, Eq. Jur. §§ 311–314; 63 Me. 17; 3 Edw. Ch. 369; Howell v. Ransom, 11 Paige, 538.