Edward PEASLEE, Jr. and
Eileen Peaslee

v.

PEDCO, INC.

Supreme Judicial Court of Maine.

July 3, 1978.

Lipman, Parks, Livingston & Lipman, P.A. by John M. Parks, Augusta (orally), for plaintiff.

Clark & Jones, P.A. by Dennis L. Jones, Gardiner (orally), David R. Downing, Wesley C. Archer, Brewer, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

Appellees Edward Peaslee, Jr. and Eileen Peaslee brought an action to rescind a contract between themselves and appellant Pedco, Inc. Appellant answered, raised affirmative defenses, and filed a paper denominated a counterclaim. After more than three and one-half years of pretrial maneuvers the parties agreed to refer the entire case to a referee. Attorneys for both parties were seasonably notified of a hearing date of May 5, 1975. On May 2, 1975, the referee received a letter from one of appellant's attorneys requesting a continuance. The request was supported by a month-old unsworn statement by a physician that one of appellant's witnesses would

be unavailable for the hearing because of illness. The referee, court reporter, and appellees with their counsel appeared at the appointed time, but no representative of appellant appeared. Appellees argued that the letter was not a proper motion for continuance and was not filed in time or supported by affidavit, but the referee held a hearing on May 5 on whether a continuance should be granted. After receiving evidence to the effect that appellant's witness was not unavailable because of illness, the referee denied the request for a continuance.

The referee then proceeded to a hearing on the merits and found as follows: Mr. Peddle, president of Pedco, and Mr. Archer, attorney for Pedco, were on May 5, 1970, officers and stockholders of appellant. Preliminary conversations, extending over several months, had taken place between Mr. Peddle and appellees with respect to Pedco's acquisition and development of certain real estate appellees then owned or were in a position to acquire. As the time for closing the transaction approached, appellees having not yet retained counsel in the matter, Mr. Peddle suggested that Mr. Archer could and would act as counsel for both Pedco and the appellees at no cost to the appellees. On May 5, 1970, Mr. Peddle, Mr. Archer, and Mr. Downing, who was Mr. Archer's associate in law practice, met with appellants to complete the transaction. Mr. Archer produced documents for execution which appellees executed. Appellees reasonably believed they were represented by Mr. Archer with Mr. Downing as his assistant. However, no disclosure was made to the Peaslees that Mr. Archer owned any interest in Pedco, Inc.

The referee found that the May, 1970, transaction was disadvantageous to appellees in five significant respects: (1) The Peaslees were permitted to execute a warranty deed containing no reference to a purchase-money mortgage they were taking back from Pedco; (2) no reservation was made of a homestead lot the Peaslees intended to reserve; (3) no provision was made for any monetary investment by Pedco either in development of the property or

otherwise, despite the fact that appellees could be deprived of any revenue from the property for a period of ten years; (4) appellees were required to pay taxes on the property unless Pedco should develop an escrow fund from sales or leases of the property; (5) an instrument in the form of a mortgage for $200,000 without interest, given by Pedco to the appellees at the closing, was never executed by Pedco, but a differently worded mortgage, back-dated, was later executed and recorded; the defeasance clause in the substituted mortgage contained no statement of the amount of the mortgage or terms of payment, but merely a reference to a contemporaneous note of Pedco payable to appellees.

The referee also found that appellant Pedco could be restored to the status quo and therefore concluded that appellees were entitled to rescind the contract. The referee's report of findings of fact and conclusions, dated October 18, 1975, was submitted to the Superior Court. On motion and over objection of appellant, the court accepted the referee's report and entered judgment on January 22, 1976, in favor of appellees. The appellant's putative counterclaim was dismissed with prejudice. Appellant now presents six grounds for reversing the judgment below.

■ On October 15, 1975, appellant had presented a motion for relief to the referee, who did not act on it. Appellant claims that the referee erred in his failure to act on the motion for relief, arguing that Rule 60(b), M.R.Civ.P. provides that a court may relieve a party from judgment on certain specified grounds. For a motion for relief from judgment under Rule 60(b) to be proper, there must be a judgment. When the motion was made, there was no judgment. Under Rule 53, M.R.Civ.P. a referee is given power to report but is given no power to enter judgment. The referee had no authority to grant relief from judgment under Rule 60(b).

■ Second, appellant argues that the referee erred in not granting a continuance on May 5, 1975, despite the fact that the

order of reference had stated that if either party neglected to appear before the referee after due notice given, the referee should proceed *ex parte*. Rule 40(c), M.R.Civ.P. provides that a court need not entertain any motion for a continuance based on the absence of a material witness unless supported by an affidavit containing specified information, and that, in any case, the grant or denial of a continuance is discretionary. Since there was no affidavit, the referee was not even required to entertain the motion. In view of the absence of any affidavit and the fact that there was substantial evidence that the witness was not unavailable because of illness as stated in the letter, we cannot conclude that the referee abused his discretion in denying the motion for continuance.

Third, appellant claims that holding the hearing on the merits in the absence of appellant's counsel deprived appellant of property without due process. Due process requires that before a party can be deprived of property the party must have notice and an opportunity to be heard. *Ginsberg v. Epstein*, 118 Me. 487, 105 A. 854 (1919). In this case, appellant's counsel was notified of the date of the hearing and failed to appear. Counsel did not even appear to argue for a continuance. The referee had no duty to postpone the hearing merely because he had received a letter from appellant's counsel stating that one of his witnesses could not attend on the date that had been set for the hearing.

Fourth, appellant argues that the Superior Court erred in accepting the report of the referee. Under subsection (e)(2)(ii) of Rule 53, M.R.Civ.P., which was applicable to this case, the court must accept the referee's findings unless clearly erroneous. The sole ground for appellant's contention is that appellant was not represented at the hearing. Pedco does not argue that the findings are erroneous in light of the testimony presented to the referee. The referee had jurisdiction to hear the case and make a report of his findings and conclusions on the basis of admissible evidence. The Superior Court was correct in rejecting this challenge to the report.

Fifth, appellant challenges the court's dismissal of its putative counterclaim. When Pedco answered the appellees' complaint, it filed a writing denominated "counterclaim". The writing said:

"While the litigation by Plaintiff against Defendant constitutes a breach on Plaintiffs part of the aforesaid contract, and while Plaintiffs actions during the recent months have hampered the successful performance of the Defendant in carrying out his obligations under the contract; the Defendant cannot at this time assess what his damages are for said breach. However, since defendant may be severely damaged if result of the above captioned litigation were favorable to the Plaintiff, the Defendant reserves the right to Counterclaim under Plaintiff's complaint at a later date, when and if damages to the Defendant become clearly assessable."

It is not clear that this statement is a counterclaim. In fact, it appears that appellant was carefully not asserting the claim then, but trying to reserve the right to assert it later. However, if the statement is read as stating a present claim it apparently asserts a claim of breach of contract by appellees. Since the entire case was referred to the referee and appellant offered no evidence to support a claim of breach of contract, the trial court acted properly in entering judgment against appellant on the putative counterclaim. The court could have found from the record that there was no evidence whatever of breach of contract on the part of appellees.

Finally, appellant asserts that the findings of the referee do not justify the conclusion that appellee is entitled to rescission. The referee found that when the agreement was executed there was an attorney-client relationship between appellees and Mr. Archer, whom appellees knew to be attorney for appellant Pedco, the other party to the agreement. The referee found also that Mr. Archer was then an officer and stockholder of appellant and that no disclosure of that fact was made to the Peaslees.

The law subjects such transactions to strict scrutiny. *See Dunn v. Record,* 63 Me. 17 (1874). The duty of loyalty requires a lawyer, at the time of retainer, to disclose to the client all the circumstances of his relations to the parties and any interest or connection with the matter at hand that could influence the client in the selection of counsel. Without complete disclosure, the law will not sanction a lawyer's assuming to act as attorney when he already has such a personal interest in the subject matter as may possibly prevent his acting fairly toward the client. The fact that Mr. Archer had any personal stake in the transaction was something the Peaslees were entitled to know in deciding whether to consent to retaining him or his associate as their attorney on May 5, 1970.

Except by express consent of all concerned, given after full disclosure of all facts that could possibly be relevant, a lawyer should not undertake to represent conflicting interests. Moreover, though there may be occasions in which it is not improper for a lawyer, when requested by both parties to a proposed transaction in which their interests may be in some respects adverse, to draft the appropriate documents and instruments and submit them to the parties for execution, the lawyer who thus undertakes to represent both parties must explain to each party the effect of any provision adverse to the interest of that party with the utmost fidelity and care. *Gardine v. Cottey,* 360 Mo. 681, 230 S.W.2d 731 (1950); Restatement (Second) of Trusts, § 2, Comment b, § 170 (1959).

In the present case, the referee found that the transaction submitted to appellees by two associated lawyers purporting to represent both parties was disadvantageous to the appellees in several respects. The nature of those disadvantages, which are described above in the summary of the referee's report, coupled with the fact that the lawyer who drafted the documents involved had an undisclosed interest in the corporation on the other side of the transaction, placed the burden on appellant of establishing that the transaction was fair and was entered into with the intelligent consent of the appellees, given with accurate knowledge of all the consequences of the transaction. That burden appellant did not meet in this case.

In view of the referee's finding that appellant Pedco has not made sales of any of the property in dispute or otherwise changed its position, the Superior Court was correct in decreeing rescission of the contract. Rescission should be decreed on condition that the appellees offer to make restitution to appellant of benefits conferred on them by appellant in the performance of the contract.

The first paragraph of the judgment of the Superior Court should be modified slightly to provide as follows:

"ORDERED AND DECREED that the contract between the plaintiffs and defendant of May 5, 1970, be rescinded on condition that plaintiffs offer to surrender to the defendant its promissory note of May 5, 1970, and tender to defendant an executed discharge of the recorded mortgage securing that note."

The entry is:

Appeal denied.

Remanded for modification of judgment in accordance with this opinion.

With such modification, the judgment is affirmed.

Costs allowed to appellees.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.