MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 175
Docket:        Wal-16-567
Submitted
  On Briefs:   July 19, 2017
Decided:       August 1, 2017

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## ESTATE OF JOHN W. GILBERT

GORMAN, J.

[¶1]  Judith Gilbert, individually and as personal representative of the Estate of John W. Gilbert, appeals from a judgment of the Waldo County Probate Court (*Longley, J.*) approving, with a modification, the report of a referee for the distribution of the estate.  Judith argues that the court erred by appointing a referee and adopting the report of the referee.  We vacate the judgment and remand for further proceedings.

## I.  BACKGROUND

[¶2]  John W. Gilbert died on February 2, 2011.  In 2012, Judith, John's wife, petitioned for informal probate of John's will and sought appointment as personal representative.  Since then, Judith and one of John's sons from a previous relationship, Nathan A. Gilbert, have engaged in highly contentious and protracted litigation regarding the disposition of John's estate.  *See Estate of Gilbert*, 2016 ME 92, ¶ 2, 142 A.3d 583.  Eventually, the court appointed

2

Judith as personal representative and declared that John died intestate.  In addition, because the parties demonstrated their unwillingness or inability to agree on any aspect of the litigation, the court took the extraordinary step of ordering a "court-imposed, month-by-month, step-by-step court-supervised plan" for the administration of the estate.  *See id.*; 18-A M.R.S. § 3-502 (2016).

[¶3]   In 2014, the court appointed a referee to "propose a plan of distribution."  Eight months later, the referee submitted a report in which he inventoried and valued the property of the estate; calculated the debts of the estate, including liens against the real property; stated which heir should receive which items of personal property; identified the exemptions and the amount of the exemptions to which Judith was entitled; and concluded that the real property "must be sold to pay the debts of [the] estate."  Before submitting his report, the referee had not conducted a hearing, admitted any evidence, or met with the parties.

[¶4]   Judith objected to the report on several grounds, including the referee's failure to comply with 14 M.R.S. § 1153 (2016).[1]  The court neither

---

[1] Title 14 M.R.S. § 1153 (2016) states as follows:

**§ 1153. Authority of referees**

All the referees must meet and hear the parties; but a majority may make the report, which is as valid as if signed by all, if it appears by the report or certificate of the dissenting referee that all attended and heard the parties.  They may allow costs

considered those objections nor acted on the report itself, but instead issued a decision in July of 2015 requiring Judith to sell the property of the estate consistent with the referee's suggestion. *Estate of Gilbert*, 2016 ME 92, ¶¶ 4, 6, 142 A.3d 583. We vacated that decision in Judith's subsequent appeal, and we remanded the matter for the court to conduct a hearing on Judith's objections and then determine whether to adopt, modify, or reject the report in accordance with the required procedure set out in M.R. Civ. P. 53(e)(2). *Estate of Gilbert*, 2016 ME 92, ¶ 6, 142 A.3d 583.

[¶5] On remand, the court conducted a hearing to consider whether to accept, reject, or modify the referee's report. The only evidence presented at the hearing was the testimony of a Department of Health and Human Services representative regarding the amount of a lien on the estate's property, Judith and Nathan's testimony that the referee never met with them or conducted a hearing before issuing his report, and Judith's testimony regarding sums she has expended on behalf of the estate. By judgment dated November 30, 2016,

---

or not to either party, unless special provision is made therefor in the submission, but the court may reduce their compensation. Any referee may swear witnesses.

A referee appointed to hear a dispute concerning real property must report the referee's decision within one year of appointment by the court unless good cause for extending this period is shown.

4

the court modified the referee's findings as to the lien against the property and otherwise accepted the report. Judith appeals.

## II. DISCUSSION

[¶6] Title 14 M.R.S. §§ 1151-1155 (2016), in conjunction with M.R. Civ. P. 53, govern the use of referees in civil actions. *See* M.R. Prob. P. 53 (applying M.R. Civ. P. 53 to probate proceedings); *see also* 4 M.R.S. § 501 (2016) (providing for the appointment and compensation of a referee in cases before the Supreme Judicial Court and the Superior Court). In general terms, a court may appoint a referee to complete certain tasks, including procuring witnesses, gathering evidence, and submitting a report to the court with the referee's findings of fact and conclusions of law. 14 M.R.S. §§ 1151, 1153, 1154; M.R. Civ. P. 53(a), (c), (d), (e); *see Hennessy v. Fairley*, 2002 ME 76, ¶ 17, 796 A.2d 41 ("The use of referees is provided for because reference relieves [judges and justices] from the necessity of conducting the trial and requires only that they consider the acceptance or rejection of the referee's report and the entry of judgment." (quotation marks omitted)). In a nonjury matter, once the referee submits a report to the court, the parties have an opportunity to object to the referee's findings and conclusions before the court decides

whether to "accept, reject or recommit the report" to the referee. 14 M.R.S. § 1155; *see* M.R. Civ. P. 53(e)(2).

[¶7] In this second appeal, Judith advances several challenges both to the referee's findings and conclusions and to the Probate Court's decision adopting those findings and conclusions. We need address only one of her arguments.

[¶8] As Judith correctly points out, 14 M.R.S. § 1153 requires that "[a]ll the referees must meet and hear the parties." Here, the record contains no indication that the referee held a hearing of any type or met with either party; the referee's report gives no indication of what evidence the referee relied on or where he obtained that evidence; and although the court made no findings of fact as to whether the referee conducted such a hearing, both Judith and Nathan testified at the hearing on remand that he did not.

[¶9] We have long held that the court's approval of a referee's report after the referee did not undertake the proper procedure for gathering the requisite evidence is error.[2] *See Brann v. Inhabitants of Vassalboro*, 50 Me. 64, 65 (1862); *Thompson v. Mitchell*, 35 Me. 281, 286 (1853); *Knowlton v. Homer*,

---

[2] In *Estate of Gilbert*, 2016 ME 92, ¶ 6, 142 A.3d 583, we addressed only the *Probate Court's* failure to conduct a hearing regarding whether to adopt the referee's report. The issue now before us is the consequence of the *referee's* failure to conduct a hearing before issuing that report—and whether the Probate Court therefore erred on remand in adopting a report unsupported by any evidentiary basis.

30 Me. 552, 556 (1849); *Peterson v. Loring*, 1 Me. 64, 68 (1820); *Short v. Pratt*, 6 Mass. 496, 498 (1810); *see also* 16 M.R.S. § 651 (2016) (applying the Maine Rules of Evidence to hearings conducted by referees); *Karamanoglu v. Gourlaouen*, 2016 ME 86, ¶ 2, 140 A.3d 1249 ("The referee held bifurcated hearings [on which the findings and recommended disposition were based]."); *Wechsler v. Simpson*, 2016 ME 21, ¶ 6, 131 A.3d 909 ("The referee held a one-day hearing in August 2014, where both parties and the guardian ad litem testified."); *Warren v. Warren*, 2005 ME 9, ¶ 2, 866 A.2d 97 ("The referee held a hearing over three days in June 2003 . . . . The case history is based on the record developed at the hearing."); *Hennessy*, 2002 ME 76, ¶ 4, 796 A.2d 41 ("The hearing before the referee commenced in July of 2000 . . . ."); *Comber v. Inhabitants of Dennistown*, 398 A.2d 376, 380 (Me. 1979) ("After a hearing, . . . the referee [issued a] recommended [decision]."); *Peaslee v. Pedco, Inc.*, 388 A.2d 103, 106 (Me. 1978) ("The referee had jurisdiction to hear the case and make a report of his findings and conclusions on the basis of admissible evidence."); *Boothbay Harbor Condos., Inc. v. Dep't of Transp.*, 382 A.2d 848, 853 n.8 (Me. 1978) ("Proceedings before a Referee are normally conducted in the same manner as a trial to the court."). Because the referee failed to

conduct a hearing, the Probate Court's adoption of any portion of the referee's report was error.

[¶10]   More troubling than this error, however, is the overarching question of why a referee was appointed in this matter at all.  By all accounts, John's estate is modest.  It likely comprises real property on which sits a motor home, as well as a couple of motor vehicles, a small amount of cash, and a few other items of personal property, with a total value of no more than $100,000.  Nevertheless, in the five and a half years since this litigation began, the parties have not had the benefit of any evidentiary hearing at which their disputes about the composition and value of the estate have been heard, nor any disposition based on an evidentiary record of any sort.  *See Peaslee*, 388 A.2d at 106 (stating that "[d]ue process requires that before a party can be deprived of property the party must have notice and an opportunity to be heard").  Meanwhile, the costs associated with litigating the administration of the estate have continued to accrue, and may already have exceeded the value of the estate; in January of 2015, for example, Nathan sought roughly $35,000 in attorney fees.  Indeed, the referee appeared to recognize the incongruity of the situation by kindly agreeing to forego his own compensation. We need not address Judith's contention that she never agreed to the appointment of a

8

referee, nor her challenge to the scope of the work the referee was asked to perform; whatever the court's and the parties' intent or understanding was, the involvement of a referee in the matter was misguided.

[¶11] We therefore remand the matter for the Probate Court itself to conduct an evidentiary hearing on the composition and value of the estate as if a referee had never been involved in the matter, and for the court to issue an appropriate decision detailing the distribution of the estate consistent with the evidence produced at that hearing.[3] This evidentiary hearing must be conducted and the resulting judgment issued as soon as possible, so that the parties have some hope of finality in this unnecessarily complicated litigation.[4]

The entry is:

> Judgment vacated. Remanded to the Probate Court for further proceedings consistent with this opinion.

---

[3] The court has already made a factual finding based on an evidentiary record regarding the size of the Department lien. It need not revisit that issue.

[4] We do not disturb the court's order for supervised administration of the estate. *See* 18-A M.R.S. § 3-502 (2016).

David Glasser, Esq., Camden, for appellant Judith Gilbert

Susan C. Thiem, Esq., Law Office of Susan C. Thiem, Lincolnville, for appellee Nathan Gilbert

Waldo County Probate Court docket number 2012-0003
FOR CLERK REFERENCE ONLY